20-2521 from the District of North Dakota, Rodenburg v. Cincinnati Insurance Company. Very well, Mr. Rodenburg, we'll hear from you first. Good afternoon, your honors, counsel, may it please the court. My name is Clifton Rodenburg and I represent the appellant Rodenburg LLP, which is a law firm. And this appeal involves the law firm's claim to both defend a claim involving lawyer's malpractice and to pay for the claim. I would like to start in my discussion with one of the exclusions which the appellee Cincinnati contends excludes our claim and that is the distribution of material and violations of statutes exclusion. This exclusion excludes any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate the telephone consumer protection act, which is the TCPA, the canned spam act, or, and then there's a general catch-all, any statute, ordinance, or regulation other than the TCPA or canned spam act of 2003 that prohibits or limits the sending, transmitting, communicating, or distribution of material or information. Our contention is that part 8C is overbroad and it has to be interpreted in conjunction with parts A and parts B, which is the TCPA and the canned spam act, which are both acts that regulate electronic transmission of material, such as emails, faxes, and telephone calls. We believe there is, and our contention is, there's a narrow interpretation, which we believe is the correct interpretation of part C, and there's a very broad interpretation of part C, and the very broad application or interpretation of part C would include all sorts of statutes, regulations, or ordinances. It would include the federal rules of civil procedure. It would include the code of professional responsibility for lawyers, it would include the bankruptcy act, and this is so broad that it would eviscerate all coverage for most law firms and especially collection law firms, which we are, and we're relying, we've got a number of reasons why we say this should be narrowly construed. The first of which is particular expressions qualify those which are general, and this is in our North Dakota century code. It's at 31-11-0525, and that's commonly known as adjustum generis. The TCPA and the canned spam act regulate only communications or information that is distributed electronically. In addition, the whole of a contract is supposed to be taken together to give effect to every part, if reasonably practicable. Counsel, how do you distinguish the recent Seventh Circuit case, American v. Aquin? That included, specifically included, many other different types of acts, which would broaden the sections C of the exclusion. In addition, there were two very different exclusions. This exclusion is a standard ISO exclusion. Zurich is a big insurance company, and they can tailor their exclusions to say this particular exclusion, there would be no reason to include the TCPA and canned spam if, in fact, there is a statute that would be surplusage. That falls under part C. Now, you could say, well, those are maybe very good examples or maybe some prominent examples. Even if they're prominent examples, they're prominent examples that are electronic examples. To answer your question, your honor, the Zurich exclusions, there were two exclusions in there. They were much broader than this particular exclusion. Is there anything about the complaint in that case that also distinguishes it from this case? I understand the argument you just made. Is there anything about the claims that were different in that case that suggest a different outcome? I would say this, that the adjustum generis argument wasn't made or wasn't appealed. I don't believe it was even made in the lower court. That's true with a lot of these cases. The, for whatever reason, the party claiming coverage did not make this claim. In the claims, in the cases where they did make the claim, and we've cited those two cases, there's a federal district court case, and then there's an appellate court case from Illinois where it was unanimous, three justices of the appellate court said this should have a narrow construction, should be limited to electronic statutes. The federal district court made a similar conclusion on it. I would ask rhetorically, if four different judges can say that this does not have a plain broad meaning, I think that's evidence in and of itself that you can make different arguments about it. We're not specifically saying you can't, that it's not necessarily a reasonable argument. We're saying that argument is a reasonable argument, too, and we actually think it's the more reasonable argument. But in North Dakota, insurance contracts are contracts of adhesion, and if they're two reasonable arguments on the meaning of a particular clause, it defaults to the insured. The other thing is that the text of the exclusion is actually more consistent with the title called distribution of material in violation of statute. That, again, refers to distribution of material, the means of distribution, not necessarily what the title says. I think it's important to note here, too, that the text of this exclusion has to be referenced to the circumstances under which the particular policy was made, and in particular, the lawyer's professional exclusion, part of the policy, which is of a different nature than the other part of a commercial policy. And if this would be applied to include all types of regulations that would somehow touch on the prohibition or limitation on the sending, transmitting, or communication of information, that it would eviscerate a lawyer's professional coverage. The final thing I'd like to note is that under the plain meaning rule, that it has to be clear and explicit, and it cannot involve an absurdity. And it's our contention that it does involve an absurdity because it eviscerates coverage for our firm. I'd like to close with the point that, again, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. And I would like to reserve the rest of my time for rebuttal. You may. Very well. Thank you for your argument. Ms. Prouty, we'll hear from you. May it please the court, counsel, my name is Beth Johnson Prouty. I'm appearing here today on behalf of Respondent Cincinnati. And I would ask that the court affirm the district court and conclude that the policy issued by Cincinnati does not provide coverage. First, the violation of statute exclusion unambiguously precludes coverage because all of the alleged liability arises out of conduct that addresses the FDCPA. First, I would ask the court to apply the plain meaning of the violation of statute exclusion. It's undisputed that the FDCPA is a statute that prohibits or limits communication of material or information. Therefore, the exclusion applies to the FDCPA claims. It also applies more broadly. It applies to all claims based on conduct arising both directly and indirectly out of the conduct that violates the FDCPA. And that's why it also applies to the common law and state law claims. It doesn't just apply to the direct FDCPA claims. It also to the indirect claims, the common law claims. And I would like to draw the court's attention to the Ockwin opinion from the Northern District of Illinois affirmed by the Seventh Circuit because I think that addresses the issues before this court straight on. Ockwin in that case was a debt collection company sued for alleged violations of the TCPA and the FDCPA and the district court looked up FDCPA and said that's a statute that regulates communication. Therefore, exclusion 8C applies. It looked at the common law and state law claims of defamation and invasion of privacy, the same type of common law claims at issue in this case. And both the Northern District of Illinois and the Seventh Circuit held all of those claims arise out of the same conduct. And therefore, the exclusion applies to those claims. Counsel, isn't the exclusion language different though? I'm sorry, Judge Cobus here. Isn't the exclusion language, as counsel pointed out, different in that case? And why doesn't that difference matter? Well, there is some slight difference of wording in that exclusion, but the difference isn't material to the outcome. It had an extra statute. It made the FCRA, Fair Credit Reporting Act, along with the TCPA and CAN-SPAM Act. And then the catch-all there said any federal, state, or local statute other than the named statutes that limit the communication of material. So the holding in that case applies the same language that's at issue before this court. I would also like to point out that all the courts around the country that have considered whether to apply this language to other statutes outside the FDCPA have applied a similar plain meaning analysis and limited it to, not so limited it as narrowly as Mr. Rodenberg would urge. The one case that... Yeah, go ahead. I was going to say, would the Illinois case be an exception to that? Well, so the Illinois case that he cites, the West Bend versus Krishna Schomburg case, which is currently on appeal to the Illinois Supreme Court, which was argued on March 20th, and that applied a totally different exclusion. That exclusion was also contained in the policy that was considered in ACWIN, but the insurer in that case didn't rely on this exclusion that was at issue in West Bend. And the issue in West Bend was an exclusion that was titled violation of statutes that govern email, fax, phone calls, or other methods of sending material or information. So the court there applied the title of the exclusion along with the content of the exclusion to be consistent with each other and held we need to construe it consistently. How about the Bullseye case out of the Eastern District of New York? Isn't that another one that supports appellant's position here? Well, in the Bullseye case, that does apply, does consider language similar to exclusion 8C, but that was not to an FDCPA claim, and it was to an entirely, it addressed an entirely different argument by the insurer. In that case, there were a number of statutes at issue, and the insurer argued that the exclusion applied to all claims, very broadly to all claims for any advertising injury arising out of federal or state law. The insurer didn't focus on the exact language of the exclusion. Instead, it just said it applies broadly to all claims, and it didn't even consider if the claims at issue in that case were claims that regulated communication. So the New York court correctly said that's too broad of an application for this exclusion. But then the court should have looked at the language of the exclusion and said, what claims does it apply to? It applies to claims that limit the communication or distribution of material. But instead, the court went off on its own and entirely, it added language to the exclusion and said, we think it's only going to apply to this specific type of claim. Well, that limitation is not found in the exclusion, and the outcome in that New York case is not consistent with how North Dakota law has stated that the courts apply insurance coverage provisions. You look at the plain meaning of the exclusions and you apply that. Here, the statute or the exclusion unambiguously states that it applies to other statutes that prohibit or limit the communication of material, and that's the FDCPA. And considering how you construe the content of the exclusion with the title, the title and the content of the exclusion are supposed to be read together in harmony and here they can be. The title is a summary of the exclusion, but it doesn't state everything to which the exclusion applies. If you look at the exclusion, it expressly says it applies to distribution or communication. The exclusion doesn't just apply to statutes. It applies to statutes or ordinances or regulations. The title is just a summary. It's not a limitation on the content of the exclusion. And if there was a conflict between the title and the content, courts consistently hold that the full language of the content controls over the title. Do you have any comment on the argument that the rule of justum generis should apply and that the catch-all should be read to encompass only statutes, ordinances, and regulations that are of the same character as TCPA and the CAN-SPAM Act? Your Honor, the rule of justum generis only applies if there's ambiguity in the exclusion, and here the exclusion is unambiguous. Section 8C is a separate subpart that's fully inclusive of itself. It's saying other than used as a means of distinguishing itself from the prior subparts, not as a language of incorporating a reference to the prior subparts. But ultimately, it doesn't matter. The outcome is the same. Even if the court would read in the language like or similar to, like Rodenberg is arguing, you reach the same outcome. Because exclusion 8C tells you how the statutes need to be alike. They need to be alike in that they prohibit or limit the sending, transmitting, communicating, or distribution of material or information. So 8C fully defines what type of statutes it's intending to apply to. I would ask that the court reject Rodenberg's argument to set adrift in trying to define how these statutes should otherwise limit the application of the exclusion. Here Rodenberg offers several limiting factors. He says it should only apply to mass marketers versus debt collectors or only to certain methods of communication like electronic communication. But that's not what the statute says or the exclusion says. It could easily have inserted the word electronic in there, but it didn't. Instead, it said that it broadly applies. I'd also like to point out Rodenberg's argument that the court should actively seek to narrow the application of the statute. That's contrary to North Dakota law. North Dakota applies the plain meaning of the exclusion and does not find ambiguity so that it can more narrowly apply the exclusion. And I would point the court to the Hilland case, applying North Dakota law, the 8th Circuit case. And in that case, the insured argued that a certain substance couldn't be a pollutant because it said, that's what we do. We manufacture this hydrocarbon condensate. That's our business. So that hydrocarbon condensate can't be a pollutant. And the insured there argued, please construe the definition of pollutant narrowly. And the North Dakota court said, no, we're going to apply the plain meaning of the exclusion. Hydrocarbon condensate is a pollutant under the plain meaning of the exclusion and the term pollutant. And the same analysis applies here. The FDCPA is a statute that regulates and limits communication. Therefore, exclusion 8C applies to all the FDCPA claims and all claims based on that same conduct. I'd also like to point out that Rodenberg has a professional malpractice policy that would cover lawyers malpractice. The only reason why that policy isn't at play here is because Rodenberg didn't timely submit his claim. And so that doesn't give him cause to then seek to rewrite his liability policy to provide coverage in this case. I'd also like to briefly just address the claims of bodily injury. If the court applies the FDCPA claims, it should find that there's no coverage for either the claims of personal and advertising injury or the bodily injury claims. If the court looks, there's also no coverage for the bodily injury claims because they don't allege bodily injury caused by an occurrence. Considering the claims in the Williams wages, there's really no dispute about that. What Rodenberg argues is that its intentional acts should be an accident because it later found out that it was acting based on a mistake. But North Dakota and 8th Circuit cases have consistently rejected that argument. All of the claims are based on intentional conduct and Rodenberg knew that emotional distress is the natural and probable consequence of having one's wages garnished. Rodenberg argues that legally actionable harm wasn't substantially certain to occur. It didn't know that Williams would bring a lawsuit. But you don't need to know or intend the type of harm. You just have to know that the harm is substantially certain to occur. And in this case, the alleged bodily injury is substantially certain to occur from having one's wages garnished. That concludes my remarks. If there's any other questions I can answer. Very well. Thank you for your argument. Thank you, Your Honor. Mr. Rodenberg, we'll hear from you in rebuttal. I'd like to address the issue of the intentional acts exclusion. What was involved here was the garnishment of a woman named Williams who had exactly the same name as another woman named Williams. And there's no contention in the complaint that the judgment against her or even that the commencement of the garnishment action against her was intentional or that it was certainly not substantially certain. The claims that they did make was that they contacted the Rodenberg law firm after the garnishment and wanted the garnishment terminated because it was the wrong Charlene Williams. But before that, the firm had no knowledge of who it was. Yet those acts of garnishing her wages constitute a violation of the FDCPA. And the FDCPA, there's no requirement of intentionality for the FDCPA. If you violate the act, you violate the act. You commit the act, you commit the act whether you did it by mistake or whether you did it intentionally or negligently. I think a lot of the argument that Cincinnati is making was before the Tebert case in 2012 where the North Dakota Supreme Court made clear that the insurer must not only show that the act was done intentionally, but it was such a character that the consequences are substantially certain to result. And the firm had, first of all, there was no foreseeability when they garnished her wages. She had the same name. And there was certainly, if you could even say there was somewhat foreseeable, it was not a substantial certainty that it was the wrong person. So the other point I would like to make. I mean, it was the wrong person. Why wasn't it substantially certain that it would turn out to be the wrong person? Because the firm didn't have knowledge it was the wrong person. So if they could show that when we started the garnishment, we had some notice or some knowledge that it was the wrong person, I would agree. But we didn't. The firm had no knowledge. The bulk of the claim against the firm were acts that were committed after the garnishment when the firm did not cancel the garnishment. The firm received no monies. They eventually did cancel the garnishment. So that's a distinction. You mean you're saying you have coverage for the initial garnishment, but not for the later actions? No, I think we do for the later actions as well, because I don't think it was a substantial certainty just because somebody contacts us and says, you don't have a judgment against me that that's true. They have to come up with evidence of that. So you mean the burden is on the other to show you that you're wrong. Otherwise, you're just engaged in an accident, accidental conduct. Well, if we have everything checks out with regard to the garnishment, the name of the person, the social security number of the person, where the person works, even the address on the credit card involved was the same. So I mean. You're saying that the person you garnished had the same social security number as the correct person? They both had the same social security number? The same social security numbers as the person. The person who was garnished had the same address on the credit card and the same social security numbers on the credit card. The same as what? As her application. She claimed that she didn't get served. She didn't claim in the complaint. We have to go by what she says in the complaint, which isn't correct. But we go by the complaint. She said, I didn't know the bill. I didn't live at this address. That's what she says. The other point I'd like to make, I don't think it's material that we had a malpractice claim plus an umbrella policy that included lawyer's professional coverage. And I don't think that's proper for the court to consider. I don't think that was proper to be brought up. Very well. Thank you for your argument. Thank you. Thank you to both counsel. The case is submitted and the court will file an opinion in due course.